410 P.2d 116

G. Sheldon **WHITESTONE**, John Arthur Whitestone, Margaret Whitestone Taylor, Gladys Whitestone Pitts, Dorothy Whitestone Long, and Robert Norman Whitestone, Appellants,

v.

The **TOWN OF SOUTH TUCSON**, a municipal corporation, Appellee.

**2 CA–CIV 118.**

Court of Appeals of Arizona.

Jan. 25, 1966.

Rehearing Denied March 8, 1966.

Review Denied April 5, 1966.

Gene Karp and Leonard Karp, Tucson, for appellants.

Manuel H. Garcia, Tucson, for appellee.

MOLLOY, Judge.

The Town of South Tucson, a municipal corporation, instituted condemnation proceedings against the defendants' vacant property in December 1963, for the purpose of developing a public park thereon. A jury trial resulted in a verdict awarding defendants $50,500.00 damages for the taking. Thereafter, the plaintiff moved to dismiss the complaint and vacate the judgment, or in the alternative, moved for a new trial, or in the alternative, moved for a remittitur. The trial court, in November 1964, granted dismissal of the complaint and vacation of the judgment. At the same time, the trial court denied defendants' motion to assess attorney's fees against the plaintiff or, in the alternative, for a hearing to determine plaintiff's good faith in abandoning the condemnation. The defendants, property-owners appeal from these orders.

Defendants contend here that they are as a matter of law entitled to costs, witness fees, and attorney's fees incurred in defending against the condemnation proceedings subsequently abandoned, either (1) because the established rule precluding such recovery is inapplicable since the doctrine of governmental immunity has been abrogated in Arizona, or (2) because the plaintiff has demonstrated a lack of good faith in its conduct of the litigation.

The Arizona Supreme Court, in State ex rel. Morrison v. Helm, 86 Ariz. 275, 282, 345 P.2d 202, 206 (1959), observed that:

"A majority of the cases take the view —in the absence of statute imposing liability—that as the State, in commencing a condemnation proceeding, is exercising a legal right, and since every person owns property subject to the exercise of such right, the damage which he suffers by reason of the institution and prosecution of proceedings subsequently abandoned does not give rise to an action on his part, but is *damnum absque injuria*. This rule, however, is subject to the qualification that the condemning party shall have acted *in good faith* both *in instituting* and *in abandoning* the proceedings, and that the proceedings, when instituted, were diligently prosecuted. Unreasonable delay is held a ground for imposing liability. 121 A.L.R. 85; 30 C.J.S. Eminent Domain § 339." (Emphasis added)

A recent annotation in 92 A.L.R.2d 355 indicates that the majority rule continues to prevail. Regarding appellants' first contention, the annotation states, at p. 359:

"No distinction has ordinarily been made, in the application of this rule, on the basis of the governmental, public, or quasi-public character of the condemnor, although in some cases liability has been denied under the rule of governmental immunity, even though malice, bad faith, or unreasonable delay was charged, where the condemnor was a public utility."

While it is true that governmental immunity has been abrogated in Arizona, Stone v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963), and while we recognize that the denial of liability has been predicated on such immunity in some

cases, e. g., Manley v. State Highway Commission, 82 S.W.2d 619 (Mo.App.1935), it is unmistakably true that the general rule is not dependent upon the doctrine of governmental immunity. 92 A.L.R.2d 355; 30 C.J.S. Eminent Domain § 339, p. 269 et seq.; 18 Am.Jur. 1013–1016, Eminent Domain § 371. In the absence of statute or contract, ordinary litigants are not liable for attorney's fees and expenses of litigation inflicted upon an adversary, Colvin v. Superior Equipment Co., 96 Ariz. 113, 392 P.2d 778 (1964), thus indicating that the immunity under discussion is not necessarily governmental in nature. Nor did the Arizona Supreme Court, in adopting the majority rule in State ex rel. Morrison v. Helm, supra, found its conclusion on the then-recognized immunity doctrine. We accordingly hold that the abolition of immunity in the Stone decision did not affect the rule enunciated in Helm.

In State ex rel. Morrison v. Helm, supra, our Supreme Court held as a matter of law that the record demonstrated such lack of diligence in prosecuting the condemnation action that the property owner should be awarded his attorney's fees, witness fees and costs. In Helm, the motion to dismiss was made after an appeal to the Supreme Court from a jury verdict deemed excessive by the condemnor. Here we have no indication of unnecessary delay in the prosecution of this action, nor do we find in the record such clear evidence of "bad faith" that we would be justified in holding as a matter of law that the plaintiff was guilty of lack of good faith in either instituting or abandoning this action. The question remains, however, whether the defendants were entitled to a hearing on this question.

The Helm decision is less than precise as to what may constitute lack of "good faith" in "instituting" or in "abandoning" a condemnation action. Clearly, however, something was intended by these words beyond simply delay after an action has been commenced. The decision in Helm is based upon failure to "diligently" prosecute. We apply this same test to the instituting

and the abandoning of a condemnation case.

■ The power of eminent domain has long been recognized as a social necessity, but it is a heavy-handed power, particularly when the condemning party reserves to itself the right to repudiate a court determination of value after imposing the expense of litigation upon the defendant landowner. Certainly, the filing of a condemnation action without reasonable investigation as to the value of that which is to be condemned, with the intention of ascertaining what evaluation a judge and/or jury will place upon the property, and of then deciding whether to accept this evaluation, would be "bad faith." Likewise, if a condemning party is dissatisfied with the jury verdict, and dismisses the action with the intention of filing again to ascertain what another jury or fact finder may do with the problem, this also would be "bad faith."

■ When wielding this almost arbitrary power, common prudence requires that the condemnor should carefully investigate to ascertain the value of the property sought to be condemned and should not proceed unless it has the set intention of paying the actual value of the property. Jury verdicts are notoriously known to vary considerably from conservative estimates and a trier of fact would not necessarily be precluded from finding lack of diligence on the part of the condemnor merely because the judgment exceeded appraisals received by the condemnor previous to filing the action. Trial judges have certain controls over excessive verdicts. 16 A.R.S., Rules Civ.P., rule 59($l$); 30 C.J.S. Eminent Domain § 310, p. 151; 18 Am.Jur. Eminent Domain § 366, p. 1008. With this safeguard, we believe that a condemnor who dismisses a condemnation action after trial should establish that the refusal to accept the determination of value reached is due to circumstances that it could not reasonably have foreseen, or else it should be held liable for the reasonable

attorney's fees, witness fees and costs of the defendant.

We therefore remand this action to the superior court for a hearing to determine whether or not the Town of South Tucson acted in good faith in this matter, and, if necessary, to determine the amount of attorney's fees, witness fees and costs reasonably incurred by defendants. Remanded with instructions.

KRUCKER, C. J., and HATHAWAY, J., concur.